Iainmaso

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

CLIFFORD S. MASS,

                 Plaintiff,

          v.                          18 Civ. 2239 (GBD)

GREG COHEN PROMOTIONS, LLC, *et al.*,

                 Defendants.          Argument

------------------------------x
                                      New York, N.Y.
                                      October 18, 2018
                                      11:15 a.m.

Before:

                    HON. GEORGE B. DANIELS,

                                      District Judge


                        APPEARANCES

CULLEN and DYKMAN LLP
     Attorneys for Plaintiff
BY:  DOUGLAS J. BOHN

KUDMAN TRACHTEN ALOE LLP
     Attorneys for Defendants
BY:  DAVID N. SAPONARA
     GARY TRACHTEN

Iainmaso

1           (Case called)

2           MR. BOHN:  Good morning, your Honor.  Douglas Bohn,

3     Cullen and Dykman, on behalf of the plaintiff.

4           THE COURT:  Good morning, Mr. Bohn.

5           MR. TRACHTEN:  Good morning.  Gary Trachten, from

6     Kudman Trachten Aloe, for the defendant.  My colleague David

7     Saponara who will be arguing the case for the defendant.

8           THE COURT:  Good morning.

9           Mr. Saponara, before we start let's focus on the

10    issues.  It is my understanding that you are voluntarily

11    withdrawing the breach of implied covenant of good faith and

12    fair dealing, Count Three; conversion, Count Four; the unjust

13    enrichment, Count Seven; and the specific demand for an

14    accounting in Count Eight.

15          Is that correct?

16          Do I have that correctly?

17          MR. BOHN:  Yes, your Honor.  Douglas Bohn on behalf of

18    plaintiff.

19          THE COURT:  I'm sorry, Mr. Bohn.

20          MR. BOHN:  That's quite all right.

21          Your Honor, yes, we had spoken a bit with the

22    defendant and also heeded the Court's suggestions at the

23    initial conference.  So what we really have done here is we've

24    streamlined this matter.  There is no challenge, as the Court

25    is aware, to the breach of contract --

Iainmaso

1          THE COURT:  Right.

2          MR. BOHN:  -- and the failure to pay wages, which is

3   Counts One and Two.  In essence, your Honor, we're basically

4   here on the fraud claims.

5          THE COURT:  Let me make sure I understand.

6          At this point, the way the complaint is written, those

7   counts are only against the corporation?

8          MR. BOHN:  No, your Honor.  Those counts are against

9   both.

10          THE COURT:  OK.  That's what I am trying to

11   understand.

12          MR. BOHN:  Yes, your Honor.

13          THE COURT:  It wasn't clear to me in the papers.

14   We'll get to that.

15          Also, my understanding is -- and we can have further

16   discussion -- that leaves basically Counts Five and Six and I

17   forget which of the other counts.  The count for attorney's

18   fees I guess is Count Ten and then there's another count for

19   piercing the corporate veil.

20          MR. BOHN:  Which is Count Nine, your Honor.

21          THE COURT:  Right.  It seems to me, unless you

22   disagree, those two counts are not substantive counts.

23          MR. BOHN:  Yes.  Correct, your Honor, obviously.

24          THE COURT:  So those go to remedies.

25          MR. BOHN:  Yes.

Iainmaso

1         THE COURT:  My position would be, unless you want to

2    argue further, that I would dismiss those as separate counts

3    without prejudice to you to demonstrate obviously if you are

4    the prevailing party in this lawsuit that you are entitled to

5    the attorney's fees per the contract, and if you can

6    demonstrate that there is a basis for piercing the corporate

7    veil in terms of enforcing the judgment, that you have the

8    right to do that.

9         Although, given the way the parties have laid out that

10   there's a company, that your client worked for the company,

11   that your client still works for the company, that there are

12   other employees of the company that this is a significant

13   amount of business being generated by the company, I don't see

14   any specific allegations here in this complaint that would

15   support piercing the corporate veil and saying somehow this is

16   a sham company and that he is in fact the company and so,

17   therefore, any liability should be personally his.

18        But that is not an issue that needs to be resolved at

19   this point.  If you obtain a judgment against the company and

20   you think you have a right to enforce against him because he is

21   the company, then you can pursue that judgment.

22        MR. BOHN:  Yes, your Honor.  We do agree with the

23   Court's initial position that Counts Nine and Ten can be

24   withdrawn or discontinued with prejudice to address those

25   points later.  To your Honor's latter point, we respectfully

Iainmaso

1    await further proceedings to argue the piercing issues, but,

2    yes, ultimately we do agree that those are not issues for

3    today.

4              THE COURT:  All right.

5              So then I guess what we really need to concentrate is

6    on the fraudulent misrepresentation claim and the actual fraud

7    claim, Counts Five and Six.

8              MR. BOHN:  Yes, your Honor, we agree.

9              THE COURT:  Mr. Saponara, let me turn to you then.

10             MR. SAPONARA:  Yes.

11             THE COURT:  First of all, is it your understanding --

12   I don't have a recollection, but is it your understanding that

13   Counts One and Two are counts alleged against both defendants?

14             MR. SAPONARA:  That's not my understand being.

15             THE COURT:  That's why I asked.  That wasn't my

16   understanding either.

17             MR. SAPONARA:  If you flip to the plaintiff's

18   opposition brief at footnote 7 --

19             THE COURT:  You have to speak up.  Pull the microphone

20   closer to you, or you can go to the podium.

21             MR. SAPONARA:  To go to the plaintiff's opposition

22   brief at page 12, footnote 7, they clarify the breach of

23   contract and wage claims are not subject to this motion to

24   be --

25             THE COURT:  Slow down.  And you will have to speak

6

Iainmaso

1   louder.

2          MR. SAPONARA:  Sorry.

3          The breach of contract and wage claims are not subject

4   to the motion, but he clarifies that, paragraph 12 says the

5   complaint is clearly between GCP and Mr. Mass, and that

6   Mr. Mass is an employee of GCP.

7          THE COURT:  Where are you quoting from?

8          MR. SAPONARA:  This is the plaintiff's opposition

9   brief at page 12, footnote 7.

10          THE COURT:  The footnote, OK.

11          Paragraph 12 of the complaint clearly states GCP and

12   Mr. Mass entered into an investment agreement.  Furthermore,

13   paragraph 25 states Mr. Mass is also an employee of GCP.

14          Well, before we begin, then let me turn back to Mr.

15   Bohn.

16          MR. BOHN:  Yes.

17          THE COURT:  Mr. Bohn, I just want to make sure I

18   understand technically your position.  Is your position that

19   these two claims are alleged against him individually because

20   he is a party to the contract, or that just based on your

21   theory that you wish to pierce the corporate veil?

22          MR. BOHN:  No, your Honor.  And we agree with counsel.

23   Counts One and Two are necessarily and only asserted against

24   the corporation.  We recognize that the corporation entered

25   into the contract with Mr. Mass, and we recognize that the

7

Iainmaso

1    corporation was obligated to pay his wages.  We do not contend

2    that Counts One and Two are being made against Mr. Cohen.  We

3    do allege that the fraud-based claims are.

4              THE COURT:  OK.  That's fine.  OK.

5              The question really is, if the fraud claims do go

6    away, is there a claim against Mr. Cohen personally?

7              MR. BOHN:  Other than perhaps enforcement along the

8    piercing line that your Honor brought up, no, there would not

9    be a remaining direct count against Mr. Cohen.  We recognize

10   that.

11             THE COURT:  OK.  So let's concentrate then on the

12   fraud claims.

13             MR. SAPONARA:  Sure.

14             So the fraud claim is purely duplicative of the breach

15   of contract claim.

16             If you look at the operative allegations in the

17   complaint here -- that's paragraphs 81 and 86 -- this is the

18   only allegation in the complaint that talks about a specific

19   representation that Mr. Cohen alleged to have made and that

20   Mr. Mass is alleged to have relied on in entering into the

21   investment agreement.

22             It says that Cohen acted on behalf of GCP falsely, and

23   in paragraph 81 and 86 it says fraudulently represented that 25

24   percent of the promotional profit, for the purpose of returning

25   the 250,000 investment for Mr. Mass --

Iainmaso

1           THE COURT:  Excuse me.  I have to interrupt you.

2           You are going to have to talk much louder and much

3    slower.

4           MR. SAPONARA:  Sorry.  OK.

5           Paragraphs 81 and 86, this is the only representation

6    that Mr. Cohen is alleged to have made prior to Mr. Mass

7    entering into the contract.

8           It says that Mr. Cohen represented that 25 percent of

9    the promotional profits, parens, for the purpose of returning

10   the $250,000 investment for Mr. Mass and an additional 5

11   percent of the promotional profits as payment on Mr. Mass'

12   financial interest in the promotional profits would be paid to

13   Mr. Mass for each event.

14          This is the exact same promise that GCP made in the

15   investment agreement.  It's plainly its only obligation under

16   the investment agreement.

17          So what the plaintiff is trying to do here is take its

18   breach of contract claim against GCP and turn it into a fraud

19   claim against Mr. Cohen.  That is improper for two reasons:

20   Number one, it makes it duplicative of the breach of contract

21   claim; and, number two, this allegation is plainly insufficient

22   to implicate any of the elements of fraud and certainly not

23   with the particularity that's required under Rule 9(b).

24          THE COURT:  Well, I am not sure I understand the

25   duplicative argument, since there is no contract with

Iainmaso

1    Mr. Cohen.

2            MR. SAPONARA:  I guess now that it's clear that they

3    are not alleging the fraud claim in addition to the breach of

4    contract claim against the company, I guess the duplication

5    argument can go by the wayside.  But it still has not -- this

6    allegation and the rest of the allegations in the complaint are

7    not sufficient to state a fraud claim against Mr. Cohen

8    individually.

9            In his opposition, Mr. Mass argued that he has claims

10   and damages which were independent of this obligation under the

11   contract.  But there's no other representations alleged in the

12   complaint.  There's no allegation that Mr. Cohen told him I had

13   these boxers on my roster and that wasn't true or that I had

14   these events lined up and that that wasn't true.  The only

15   precontract representation that is alleged in the complaint is

16   that GCP will pay what it's supposed to pay under the contract.

17           They cite a number of different cases talking about

18   instances where a fraud claim can be stated based on

19   nonperformance of the contract, but all of the -- or based on

20   inducing someone to enter into a contract.  All of those cases

21   relate to collateral representations.  So, I've got orders in

22   hand, a statement of a present fact that proved not to be true

23   that the plaintiff relied on.

24           That's not the case here.  There's no present fact

25   allegations.  The only allegation is that GCP is going to

Iainmaso

1   perform under the agreement.  That is a statement of future,

2   and all it leaves is a breach of contract case against GCP.

3   It's not enough to state a fraud claim against Mr. Cohen

4   individually.

5          THE COURT:  Is Mr. Mass still an employee of this

6   company?

7          MR. SAPONARA:  He is not.

8          THE COURT:  He was employed for what period of time?

9   He was an employee at the time the complaint was filed?

10         MR. SAPONARA:  No.  I think he resigned in, I think

11  it's January 2018.

12         THE COURT:  OK.

13         MR. SAPONARA:  He became employed about a month after

14  the investment agreement, so that would be April of 2015.

15         THE COURT:  I'm sorry.  Give me that one more time.

16         He was employed for what period of time?

17         MR. SAPONARA:  From April of 2015 until January 2018.

18         THE COURT:  All right.  The complaint was filed when?

19         MR. BOHN:  Your Honor, I think I can clarify.  He was

20  employed at the time that the complaint was filed.  He resigned

21  thereafter, in February.

22         THE COURT:  That's what I thought.

23         MR. BOHN:  Yes, your Honor.

24         MR. SAPONARA:  It was in February.

25         THE COURT:  He was employed when this complaint was

Iainmaso

1    filed on January 31, 2018, or I assume somewhere around that.

2           MR. SAPONARA:  The stamped date February 5, 2018.  It

3    might be dated January.

4           THE COURT:  Yes.  The complaint with Mr. Bohn's

5    signature is January 31, 2018.

6           All right.  So there was a relationship with the

7    company, an employment relationship with the company and

8    obviously some personal relationship with Mr. Cohen from March,

9    or even before that, but at least March of 2015 through January

10   of 2018 when the complaint was filed?

11          MR. SAPONARA:  Yes.

12          So the complaint doesn't give any background of prior

13   to March 10, 2015, when the corporate defendant and Mr. Mass

14   entered into the investment agreement.

15          So, whether or not there is any history, there's no

16   allegations here that say what that history is or what the

17   negotiations of the contract were or anything leading up to

18   signing the contract.

19          THE COURT:  My understanding, if I have it correctly,

20   is that the allegations of the complaint don't cover a period

21   beyond December of 2017?

22          MR. SAPONARA:  That's correct.

23          THE COURT:  I think I have paragraph 65 that says for

24   the time period of April 2015 through December 2017 Mr. Mass is

25   entitled to salary of $135,000?

Iainmaso

1              MR. SAPONARA:  That's correct.

2              THE COURT:  Go ahead.  You can continue with your

3    argument, I interrupted, with regard to the fraudulent

4    inducement, fraudulent misrepresentation -- it's really alleged

5    as a fraudulent inducement.

6              MR. SAPONARA:  Yes.  It comes back to the sole

7    allegation that Mr. Mass alleges that he relied on in entering

8    into this transaction was that Mr. Cohen told him GCP would

9    perform its obligations.  That is not enough here.

10             Mr. Mass in his opposition tries to point to a number

11   of different, quite frankly, inflammatory allegations that are

12   in the complaint, but they have nothing to do with his decision

13   to enter into the contract.

14             It's all, if you look carefully at it, so-called acts

15   of bad faith and malfeasance in terms of failing to pay

16   corporate debts or the use of corporate funds for personal

17   expenses.  These are all specifically alleged in paragraph 53

18   to have occurred after March 2015.

19             THE COURT:  Well, I wasn't quite sure.  There was a

20   possibility of some overlap.  Where are you pointing me to.

21   Which paragraph?

22             MR. SAPONARA:  Paragraph 53.

23             THE COURT:  I can verify that with Mr. Bohn, but 53

24   says --

25             MR. SAPONARA:  It says, Upon information and belief,

Iainmaso

1    in addition to the allegations set forth above, since March of

2    2015 --

3              THE COURT:  Right.

4              MR. SAPONARA:  -- Cohen has made numerous material

5    misrepresentations and others concerning his business and

6    committed numerous acts of bad faith and malfeasance.

7              If you look down at the subparagraphs, none of those

8    are representations.  Even if they were, they were post

9    inducement, alleged inducement for representations that --

10             THE COURT:  My recollection is that the agreement was

11   signed, I mean he doesn't allege it previously, but the

12   agreement was signed March 10, 2015.

13             MR. SAPONARA:  Yes.  This allegation is since March of

14   2015.

15             THE COURT:  Right.  So that could be since March 1.

16             MR. SAPONARA:  I think it Rule 9 requires a little

17   more specificity.

18             THE COURT:  I understand that.  But "since March"

19   doesn't necessarily mean that every allegation or every fact

20   happened after March 10.  That may be the case, and it's not

21   alleged that it even happened after March 10, and we can

22   discuss that.

23             MR. SAPONARA:  But he's not alleging that he relied on

24   any of these representations.  Even if we are going to assume,

25   which is not in the complaint, that something happened between

Iainmaso

1    March 1 and March 10, if you go to paragraph 82, the

2    representation that Mr. Cohen is alleging that he relied on is

3    the representation in 81.  Again, that goes back to the

4    representation that GCP is going to perform under the contract.

5         THE COURT:  Yes.  But in terms of timing, I assume

6    that that was a representation that was made before they signed

7    a written contract.

8         MR. SAPONARA:  It is a promise to perform.  It is a

9    promise that GCP is going to perform.

10        THE COURT:  I understand.  That is a separate

11   argument.

12        MR. SAPONARA:  I think it is a reasonable inference.

13        THE COURT:  It is a separate argument as to whether or

14   not that would constitutes a separate fraud.  I understand that

15   argument, but your timing argument, I think that it is clear

16   that promises that are usually in a written agreement are

17   usually made and understood by the parties before they sign the

18   written agreement.

19        MR. SAPONARA:  Yes.  I agree that this representation,

20   if you are going to read this, this is the only representation

21   that is alleged prior to them signing the contract.  I agree

22   with that.

23        THE COURT:  OK.

24        MR. SAPONARA:  One final point.  The damages that he

25   is seeking here are the exact same damages for GCP's breach of

Iainmaso

1   the contract.  There's nothing that distinguishes this claim

2   from the breach of contract except that it's an attempt to put

3   Mr. Cohen in on personal liability, which I think we all now

4   agree he can't do under a veil-piercing theory, so this is the

5   only remaining hook to try to bring Mr. Cohen into this case,

6   which we think is inappropriate under the --

7            THE COURT:  Two questions I have for you, and then I

8   also have for the other side.  One is, what, to your

9   understanding, is the difference between Count Five and Count

10  Six.

11           MR. SAPONARA:  That's a good question.  I would like

12  to hear Mr. Bohn's answer to it.  I didn't write this pleading.

13  I think they're certainly duplicative of one another, and the

14  allegations are nearly identical.  In the briefing there's no

15  distinguishing between just general case law discussing common

16  law fraud in New York or what these are termed as, fraudulent

17  misrepresentation and actual fraud.

18           THE COURT:  All right.

19           What about the whole discussion about which counts

20  were in and were out.  There is still a factual allegation with

21  regard to this $14,000 loan.  I am not quite sure where it fits

22  in now or whether or not it is within a count.

23           MR. SAPONARA:  I think it is pled within the breach of

24  contract count, but we explain in our papers why we think that

25  count is not sufficiently stated.

Iainmaso

1          THE COURT:  There would have to be a separate breach

2     of contract count against Cohen, because that's not just the

3     GCP count.

4          MR. SAPONARA:  Correct.

5          THE COURT:  That's not Count One or Count Two.

6          MR. SAPONARA:  Yes.

7          THE COURT:  I think it is alleged now as the

8     conversion count which has been dropped.  I'll ask Mr. Bohn

9     whether or not he intends to proceed against Mr. Cohen on some

10    separate contract theory and allege a breach of contract based

11    on these facts.  There is a different question as to whether or

12    not, even though he's dropped the conversion claim, I am just

13    trying to figure out is there any relevance to these facts.

14         MR. SAPONARA:  I think, however it's pled or whether

15    it's a separate count or bound up in -- it would have to be a

16    separate count, it's just not a sufficient claim under the New

17    York law, because it's a written -- it's a promise to satisfy

18    the debt of another.

19         THE COURT:  I am not sure I understood that, that I

20    agree with that in reading the facts.

21         The facts don't say that there was a contract

22    between -- what is his name?

23         MR. SAPONARA:  Mr. Rizzo.

24         THE COURT:  Rick Rizzo or something.

25         MR. SAPONARA:  Yeah.  I agree the complaint is not

Iainmaso

1  very clear.

2          THE COURT:  Yes.  But the complaint does not say that

3  Rizzo borrowed money from Mass that Cohen is guaranteeing.  The

4  way I read the complaint, it says Cohen asked Mass for the loan

5  and assured him that he would be paid back and then told him to

6  wire the money to Rickey whatever his name is.

7          MR. SAPONARA:  Rizzo.

8          I think their opposition concedes that this was a loan

9  being made to Mr. Rizzo.  When you go to page 16, they talk

10  about they know the payment was made directly to Mr. Rizzo.

11          THE COURT:  The payment was made directly to

12  Mr. Rizzo.  When I look at the complaint -- and maybe they will

13  concede this, I don't know if they still intend to pursue

14  this -- but if I look at Count Four, it says, paragraph 77

15  says, Additionally Cohen improperly converted the $14,000 loan

16  extended from Mass to Cohen.  It says the loan was extended to

17  Cohen.  It doesn't say the loan was extended to Rizzo.  I think

18  there was some other language.

19          MR. SAPONARA:  I think if you go to the bottom of page

20  16, it says -- he references a text message, "Whatever I do for

21  Ricardo" --

22          THE COURT:  I'm sorry.  Where are you?

23          MR. SAPONARA:  This is the bottom of page 16 of the

24  plaintiff's opposition brief.

25          THE COURT:  The brief, OK.

Iainmaso

1      MR. SAPONARA:  Just to be clear, in their opposition

2  they don't argue that this is a direct contract.  They try to

3  oppose our argument that this is a loan guarantee that needs to

4  be in writing.  They don't come back and say this is a direct

5  breach of contract claim against Mr. Cohen for a loan that

6  Mr. Mass gave to Mr. Cohen.

7      So, if you look at the second half of the paragraph,

8  he references a January 2016 text message where plaintiff

9  stated, "Whatever I do for Ricardo, I need March 1."  Mr. Cohen

10  replies, "Correct, a hundred percent, signed in blood."

11      That suggests or it shows that plaintiff knew that he

12  was loaning money to Mr. Ricardo.  He wasn't giving money to

13  Mr. Ricardo to pay for something as a loan to Mr. Cohen.  It

14  wasn't a direct payment of on Mr. Cohen's behalf.

15      THE COURT:  You know the circumstances of that

16  transaction and I don't.  I see that language, I read that

17  language in the complaint.  I mean I read the language in the

18  brief.  But I am looking at the complaint, and, one, I don't

19  see any details about this loan, about what it was for and when

20  it was supposed to be paid back, who was supposed to pay it

21  back, what the purpose of it was, none of that.  I just see

22  language in this complaint that says that basically says that

23  Cohen asked Mass to send money to Rizzo.

24      I don't see a direct contract between Rizzo and Mass.

25  I see a contract between Cohen and Mass.  If you came to me and

Iainmaso

said, I need you to send $14,000 right away to Mr. Bohn, and I

said, well, am I going to get paid back?  And you say, Yeah,

don't worry about it, you will get your money back, just send

him the money, wire it to him, and then I wire money to Mr.

Bohn, how is that a contract between me and Mr. Bohn?

If the money shows up in his account and Mr. Bohn says

to me:  Well, thanks for the money.  I spent it.  I am not

giving it back to you.  I didn't borrow this money from you.

This is the agreement that you made with Cohen, not with me.

Where's the contract between the person who the money was wired

to simply because they were wired the money?  That's what I

didn't understand in this complaint.  It doesn't really say

that these guys even had a conversation.  It doesn't even tell

me they know each other.

MR. SAPONARA:  I agree this isn't the only situation

where there is a lot of detail lacking in the complaint.

Obviously things evolved since then, and Mr. Bohn in the

opposition has interjected some --

THE COURT:  You guys must know something I don't.  All

I know is what is in the complaint.

MR. SAPONARA:  Sure.  I think Mr. Bohn could probably

better address what plaintiff's intentions are with this

action.

THE COURT:  Right.  Because right now it is not a

cause of action --

Iainmaso

1          MR. SAPONARA:  Correct.

2          THE COURT:  -- a conversion cause of action.  Maybe it

3     is a new point.

4          MR. SAPONARA:  It was withdrawn and Count One is only

5     against the company.

6          THE COURT:  OK.

7          MR. SAPONARA:  If there are no other questions, thank

8     you.

9          THE COURT:  Let me hear Mr. Bohn with regard to this.

10          MR. BOHN:  Thank you, your Honor.

11          Would you like me to use the podium or are you

12     comfortable with me here.

13          THE COURT:  I'm comfortable where you are comfortable.

14          MR. BOHN:  Thank you very much.

15          A few issues to address right off the bat, your Honor,

16     including counsel's concession that there is no duplication

17     argument left here and that we are really talking about the

18     fraud claim.

19          At the Court's convenience when, it reviews the papers

20     further, in response to his discussion of paragraph 81, I would

21     also direct the Court to paragraphs 82 and 87 when it can

22     review, an allegation is made --

23          THE COURT:  Paragraph 82 of the complaint?

24          MR. BOHN:  Correct, your Honor.  And 87, where the

25     allegation is.  It's part of the fraud claim.  Separate from

Iainmaso

1    the failure later for GCP or defendants to pay on the contract,

2    the allegation of Mr. Mass is that when that contract was

3    entered there was never any intention of Mr. Mass in order to

4    pay that.  The breach comes later.  We understand that, in his

5    failure to pay the promotional profits --

6             THE COURT:  You would have to concede the law in New

7    York State and almost everywhere, if not everywhere, that if I

8    am going to sell you my car and you say I will give you $10,000

9    if you give me your car, and you give me $10,000 and I say to

10   myself, well, that's a quick easy $10,000 I will agree to that.

11   And I say, OK, let's sign a contract.  I'll sell you my car for

12   $10,000.  You give me the $10,000.

13            That is a lawsuit.  Then you say give me the car, and

14   I say you know what, I am not going to give you the car.  As a

15   matter of fact, I never intended to give you the car.  It is my

16   car.  I changed my mind.  I don't want you to have it or for

17   whatever reason I say I don't want to give it to you.

18            The law says that your right is under the contract,

19   that you can't say that simply because, as you just

20   articulated, because I never intended to perform the

21   responsibilities and duties and obligations in the contract

22   that that is sueable as a fraud rather than the breach of the

23   promise.  There's a good reason for that.  Because it doesn't

24   matter whether I intended to give you my car when I signed the

25   contract.  The question really comes down to whether I

Iainmaso

1   performed at the time when it became my obligation to perform.

2          If I didn't perform when it became my obligation to

3   perform, I am in breach of contract.  And if I am in breach of

4   contract, I can't at the same time say the facts that

5   constitute my breach of contract, the exact same facts that

6   constitute my breach of contract is somehow a separate claim

7   for fraud.

8          The court says, well, no, you have a contract.  That's

9   why you have a contract.  You have that promise, and you get to

10  enforce that promise.

11         There's no allegation here that there wasn't a

12  contract or somehow some promise outside of the contract was

13  made that caused my damage.  The only thing that caused the

14  damage is, it seems to me, that what you say paragraph 81 seems

15  to be the sole representation that you claim was fraudulent.

16         MR. BOHN:  No, not necessarily.

17         THE COURT:  So what other paragraph is the substance

18  of the promise or the representation that was made that you say

19  was the fraudulent misrepresentation.

20         Let me be more specific.  You say that Cohen falsely

21  represented that 25 percent of the profits and an additional 5

22  percent of the promotional profit would be paid to Mass.  And

23  that's what was put into the contract.

24         OK.  So that's the exact promise that was in the

25  contract.  I don't see any other promise that was made that you

Iainmaso

1    allege other than the promise that's in the contract that you

2    say induced Mr. Mass to sign the contract.

3              MR. BOHN:  Two points, your Honor.

4              First, earlier on, counsel made reference to, I

5    believe it's 52 and 53, and that was how the funding was used

6    as alleged -- obviously we are at the pleading stage and the

7    pleadings if they're facially valid are to be accepted -- that

8    the money was used directly for other purposes and the

9    allegation --

10             THE COURT:  I'm sorry.  Slow down.  What paragraph are

11   you referring to?

12             MR. BOHN:  52 and 53.

13             THE COURT:  It can't be 52.

14             MR. BOHN:  I'm sorry, your Honor.  53 and 54; 55 and

15   56.  We mention these in our papers.

16             THE COURT:  Wait a minute.  You have to slow down now.

17             53 and 54?

18             MR. BOHN:  Yes, your Honor.

19             THE COURT:  That spills over into my question about

20   what the difference is between these two counts.

21             What is in 53, what specific factual representation

22   that you say was made to your client that your client relied

23   upon that's in 53 or 54?

24             MR. BOHN:  The use of the funds --

25             THE COURT:  Well the use of the funds is not a

Iainmaso

1  representation.

2        MR. BOHN:  Well, it was Mr. Mass's understanding that

3  the funds would be invested into the company itself and

4  utilized by the company itself in order to get to the very

5  essence of what his investment was.

6        THE COURT:  So what was the material misrepresentation

7  that you are alleging in these paragraphs?

8        MR. BOHN:  Well, that this money was not used as an

9  investment in the company.

10       THE COURT:  OK.  But you just can't say it that way,

11 because that is not a representation.  So tell me what is the

12 material representation that he relied upon that you say was

13 the false statement that was made to him?  Show me the

14 language.  Quote it to me in the --

15       MR. BOHN:  I cannot quote you exact language, your

16 Honor.

17       THE COURT:  But don't you need that?  You need a

18 misrepresentation of fact.  You need to say that he told me X

19 and, in reliance on that, I did Y.  I'm missing the X.

20       MR. BOHN:  I understand, your Honor.

21       THE COURT:  Because the fact that he used it to pay

22 tuition for his family may be some sort of violation, but that

23 in itself is not a fraud because that in and of itself had

24 nothing to do with why your client signed the agreement, and he

25 made no representations about whether he was going to pay the

Iainmaso

1    tuition of his family.  That may be some kind of theft of the

2    company or it may be some kind of misuse of company funds.  It

3    may be the company may have some recourse against him and the

4    investors in the company may have a recourse against him.  But

5    because he's done bad things, because he used money in the

6    company for his own personal entertainment, that doesn't

7    explain to me how this has anything to do with defrauding

8    Mr. Mass by making some representation to him that caused his

9    damages.

10          MR. BOHN:  I understand, your Honor.  I do agree,

11   acknowledge that a reasonable interpretation of the claims

12   needs to be made here.

13          THE COURT:  What is the interpretation?  What is it

14   that you think that you can allege further that your client

15   claims that was a material misrepresentation other than your

16   statement, which is consistent with paragraph 81, that when he

17   signed the contract and promised to give him these profits that

18   he never intended to give him these profits?

19          Other than that, what is it that your client was told

20   by Mr. Cohen that made your client either sign the contract or

21   made your client lose additional money other than your damages

22   under the contract?

23          MR. BOHN:  Two responses, your Honor.  The reasonable

24   interpretation that I am speaking of is that when Mr. Mass made

25   the investment of $250,000 into the company --

Iainmaso

1          THE COURT:  Right.

2          MR. BOHN:  -- to grow the company.

3          THE COURT:  Right.

4          MR. BOHN:  That the funds would be used for the

5     benefit of the company.  That's the reasonable interpretation I

6     was speaking of.

7          THE COURT:  Why is that a reasonable interpretation?

8     Who cares what the money was used for?  You wouldn't say that

9     somehow it affects the obligations and rights of the two people

10    who signed the contract depending on what the money was used

11    for.

12         You would still say I don't care if he went to

13    Disneyworld with the money I gave him $250,000, and he promised

14    me that he would have a percentage of the profits of the

15    company.  What difference would it make whether he went to

16    Disneyworld on your money, as long as you got what you

17    bargained for?

18         MR. BOHN:  That's one of the problems here, your

19    Honor.  We haven't gotten it.

20         THE COURT:  Right.  The question is why didn't you get

21    it.  You didn't get it because they breached the contract.

22    That's what you claim.

23         MR. BOHN:  Our claim is that the belief that the money

24    would be used in -- I don't know.  That's the point of

25    discovery.  I don't know if the use of this money into the

Iainmaso

1    company would have been better used.

2            THE COURT:  What difference does it make?  What

3    difference does it make to his obligation to pay your client.

4            MR. BOHN:  Because there was the understanding of our

5    client -- and I understand, your Honor, if your Honor believes

6    as a matter of law that that's insufficient, I understand that,

7    your Honor.

8            THE COURT:  I am just trying to understand.  I am also

9    trying to understand who this claim is against.  Are you trying

10   to assert this claim against both or just Mr. Cohen.

11           MR. BOHN:  We would concede that this is against

12   Mr. Cohen.

13           THE COURT:  OK.

14           MR. BOHN:  I would also like to add another item.

15   Your Honor put it very well before, where you said for the most

16   part typically before a written agreement is entered into there

17   are discussions had.  There is another example where we base

18   these claims on, and that would be of what's called the GCP

19   roster, which is the list of the fighters, which was ultimately

20   later on made part of the agreement.

21           THE COURT:  Right.

22           MR. BOHN:  And which Mr. Cohen indicated this in

23   essence was my stable.  This is my stable of fighters.

24           THE COURT:  All right.

25           MR. BOHN:  Our understanding at this point is that is

Iainmaso

not true.  We asked in informal -- we won't get into discovery

issues, that is ongoing.  We asked in informal discovery, and

we didn't get, we said, hey, give us all your promotion

agreements for everybody on your roster, because as your Honor

very, very well said, the discussions were had before.  They

were had over dinner I understand.  But the representation

before entry into the contract included, hey, these are my

fighters.  It is a substantial list, your Honor.

THE COURT:  OK.

MR. BOHN:  We are alleging that those individuals at

that point -- and we still need discovery on it -- were not

part of GCP, were not under contract with GCP.

If Mr. Mass is entering into a contract, OK, and the

promotional profits, which is alleged here, and the definition

in the agreement talks about the roster, it's part of it.  It

is part of the forms of the contract where, OK, here are these

fighters.

THE COURT:  But that is not articulated in the

contract you are saying?

MR. BOHN:  The definition of promotional profits and

the --

THE COURT:  Right.

MR. BOHN:  -- basis for entering into the contract

prior, the definition of promotional profits includes and

references the roster.

Iainmaso

1          THE COURT:  OK.

2          MR. BOHN:  Obviously Mr. Mass is going into this

3     agreement saying, OK, if your fighters make money GCP fighters

4     make money, then I get paid.  Who are the fighters?  That's the

5     essence of what that agreement is.  That is an inducement.

6          THE COURT:  I'm trying to figure out what your

7     additional damages are other than the damages that you are

8     seeking in contract?

9          MR. BOHN:  The additional damages is we don't know

10    what the end number on the damages is because we need to know

11    which of these fighters were on roster or not on roster --

12         THE COURT:  Right.

13         MR. BOHN:  -- and how that misrepresentation -- we

14    need to know.  I know your Honor may disagree whether or not

15    the use of a quarter of a million dollars into the company

16    would have created a greater return, not just on the contract,

17    but on the relationship.

18         THE COURT:  If that were the case, wouldn't you be

19    entitled to that greater return pursuant to the contract?

20         MR. BOHN:  Yes, your Honor.  But we are also alleging

21    that the underlying fraudulent misrepresentations and then the

22    fraudulent use of the moneys could very well affect the

23    damages.

24         THE COURT:  I am only going to discuss this in terms

25    of, if I do dismiss these claims, whether or not, if I give you

Iainmaso

1  an opportunity to put that in your complaint, it wouldn't be

2  futile to attempt to amend.

3        MR. BOHN:  That is certainly an alternative, your

4  Honor, your Honor, that we're willing to do.

5        THE COURT:  But the reason why I raised that is

6  because I went back to Mr. Cohen's declaration, in which he

7  attaches the agreement.  It has a merger clause:  "This

8  agreement represents the full, complete, and entire agreement

9  between the parties hereto and supersedes all other agreements

10  between the parties."

11        And the modification language:  "This agreement shall

12  not be supplemented, amended, or modified unless done in

13  writing and executed by all parties thereto."

14        So wouldn't that necessarily mean that everything that

15  your client was promised and reasonably relied upon is supposed

16  to be in this agreement?

17        MR. BOHN:  The roster is part of the agreement, your

18  Honor.

19        THE COURT:  OK.

20        MR. BOHN:  To your point, it is attached.

21        THE COURT:  OK.

22        MR. BOHN:  So if that roster or any representation of

23  the people on that roster was made prior and then made part of

24  the -- he can't cure a misrepresentation by putting it into the

25  agreement I respectfully say.

Iainmaso

1          THE COURT:  OK.

2          Again, I am just not sure what you say that you can

3   get from Mr. Cohen personally as opposed to what you are

4   entitled to get as damages under the contract.

5          MR. BOHN:  Well, we do allege that there were injuries

6   to Mr. Mass' credit ratings.

7          THE COURT:  Because of what?

8          MR. BOHN:  Because of this agreement.

9          THE COURT:  Right.  I am not sure --

10          MR. BOHN:  Because of his entry into the agreement.

11   Because he was induced to enter into that agreement, he lost

12   the use of money.  He had credit issues.

13          THE COURT:  Yes.  But that would have been the

14   consequence of this agreement whether they breached or not,

15   wouldn't it?

16          MR. BOHN:  No.  The breach is separate, your Honor.

17          THE COURT:  How did they ruin his credit?

18          MR. BOHN:  Well, because he didn't have the money.  He

19   had to start borrowing.

20          THE COURT:  He didn't have the money to do what?

21          MR. BOHN:  For basic -- you know, I would obviously

22   want to engage in more discovery on it, but --

23          THE COURT:  I know, but when he gave him the money he

24   didn't have the money.

25          MR. BOHN:  When gave him the $250,000, he lost the use

Iainmaso

1    of the money for other purposes.

2            THE COURT:  But he knew he was going to lose the use

3    of the money.  That's why he gave it to him.

4            MR. BOHN:  But he also expected to get returns on

5    that, which he hasn't, which I know your Honor will say doesn't

6    that go back to the breach of contract.  I would respectfully

7    say that the inducement in order to get him into it is a

8    separate wrong because of the misrepresentations.

9            THE COURT:  I guess my view finally is you have to

10   explain to me what's the difference between those two fraud

11   counts.  I don't see that your factual allegations are any

12   different, and I'm not even sure what theory, if it's not a

13   fraudulent inducement theory, I'm not sure what the second

14   fraud theory that you are alleging with regard to fraud legally

15   being defined as a material misrepresentation that your client

16   relied upon.

17           What is the different material misrepresentation that

18   your client relied upon that caused him damages in Count Six

19   that is different from what's Count Five?

20           MR. BOHN:  Obviously, your Honor, there is a bit of

21   pleading in the alternative here which we originally filed in

22   state court.  Of course, the obligations are still there.  We

23   believe that the fraud as to the inducement would be any

24   promises, for example, the roster.

25           THE COURT:  Right.

Iainmaso

1         MR. BOHN:  That caused him to enter into the

2  agreement.

3         THE COURT:  OK.

4         MR. BOHN:  To a certain extent that could also be

5  supported by our argument that his intent was never to utilize

6  the money for the company.  As to the fraud, it would more so

7  boil down to the misuse of those funds which Mr. Cohen knew he

8  was taking from Mr. Mass and then used for those other

9  purposes, a fraudulent use of that money by Mr. Cohen.

10        THE COURT:  When you say fraudulent use, you're using

11  "fraudulent" not in its legal sense.  You're using it in some

12  generic sense.  That's just bad conduct.  That technically is

13  not a fraud.  A fraud is you made me part with my money by

14  lying to me.  That's a fraud.  I mean, if we were to talk about

15  it in layman's terms, that's the legal essence of a fraud.

16        I understand you are saying to me that -- two things,

17  that you made me lose money because I gave you the money,

18  because you promised to give me these profits or, if you say

19  that I want to allege -- I mean I intended to allege that I

20  gave you my money because you told me you had a roster of

21  people and you really didn't have that roster, but I don't

22  understand what a separate fraud is with regard to -- well,

23  let's put it this way.  There's no such thing as two different

24  frauds, one being a fraudulent misrepresentation and another

25  being a fraud.  There's just no such separate count.

Iainmaso

1          MR. BOHN:  Understood, your Honor.

2          THE COURT:  There's no such separate legal count.  A

3     fraud is a fraudulent misrepresentation.  If it's not a

4     fraudulent misrepresentation, it's not a fraud.  It may be a

5     theft.  It may be a breach of contract.  It may be a securities

6     fraud -- I won't say securities fraud, but it may be something

7     else.

8          Unless you can explain it to me, I can't accept that

9     there's one thing that's called a fraudulent misrepresentation

10    and that there is a separate thing called an actual fraud.

11         MR. BOHN:  Perhaps it's inarticulately titled, but the

12    concept would certainly be towards the fraudulent

13    misrepresentation, be it the roster, the use of the funds.

14         One other point, your Honor, that you are making, it's

15    a good one, as to what the conduct was.  Well, he gave him the

16    money.  He can do whatever he wants with it.  I think the

17    distinction on this one is that Mr. Mass was purchasing or

18    obtaining a stake in the promotional profits, not in the

19    company itself.

20         THE COURT:  Right.

21         MR. BOHN:  But in the promotional profits, which is a

22    little bit different than maybe --

23         THE COURT:  But he didn't have any guarantee that it

24    was necessarily going to make a profit.

25         MR. BOHN:  No, he certainly did --

Iainmaso

1          THE COURT:  I understand.  You say that he had the

2  right to --

3          MR. BOHN:  But he did have a reasonable belief or a

4  reasonable basis to believe that the money would be utilized

5  for GCP.

6          THE COURT:  I know, but that is true in every

7  contract.

8          MR. BOHN:  Right.

9          THE COURT:  That doesn't define it as a separate

10  fraud?  Inherent in a contract is that the money would be used

11  for a legitimate purpose, not necessarily.  I guess that's not

12  inherent in a contract.  Quite frankly, it's not necessarily

13  inherent in this contract.

14          What is inherent in this contract is that in good

15  faith whatever profits were made that he would get 25 percent

16  of them.  But I am not sure you can argue that, well, I entered

17  into a contract to get 25 percent of the profits, and after I

18  did that, they decided that, for whatever reason, that they

19  didn't want to make a profit this year.  Do I have the right to

20  tell them that you have to make that profit?

21          View it in this context:  If I know that there's a

22  fight that you can promote and that it would generate profits

23  and I would be entitled to 25 percent of those profits, is

24  there something about this contract that forces them to do that

25  promotion?

Iainmaso

1      MR. BOHN:  Nothing in the plain language.  But to go

2  back to your Honor's point, I believe that would be implicit in

3  any contract.

4      THE COURT:  Right.  It's implicit in a contract, and

5  it would be consequential damages for the breach of that

6  contract.  But, as you sort of acknowledged by dropping the

7  good faith and fair dealing, it may be a claim of good faith,

8  you know, that they violated their covenant of good faith and

9  fair dealing, but the problem that I have is that you want to

10  say that -- is it your theory that even if you -- I guess I

11  have to back up, because I don't remember your answer to this.

12  Is this count solely against Cohen.

13      MR. BOHN:  Yes.

14      THE COURT:  These two fraud counts, not against the

15  company.

16      MR. BOHN:  Correct.

17      THE COURT:  All right.  I have never seen a

18  circumstance -- and if you've cited a case that stands for that

19  proposition I would like to see it -- but I have never seen a

20  circumstance where someone enters into a contract with a

21  company, the company doesn't perform the obligations under that

22  contract, and so the person can get to sue the company for

23  breach of contract and sue the individual who signed on behalf

24  of the company in fraud.

25      MR. BOHN:  It is pled against defendants.  The conduct

Iainmaso

1   is Cohen's.  To the extent that Mr. Cohen as president -- I

2   believe that's his title -- conduct is imbued upon the

3   corporation, then it would be asserted against both.  My answer

4   certainly was -- my understanding was, you know, whose conduct

5   are we talking about?  And it would be Mr. Cohen's.

6           THE COURT:  What I'm asking you is very technical.

7   When I give this case to a jury, am I going to ask the jury

8   whether or not the company is liable for fraud?

9           Are you asking for that kind of determination and a

10  statement to the jury that you are to decide whether the

11  company is liable for fraud and whether or not you are going to

12  give money damages against the company because they committed

13  fraud?

14          Are you bringing this count against the company?

15          MR. BOHN:  At this point the count is being brought

16  against both defendants, yes, your Honor.  I think I

17  misunderstood your question earlier.

18          THE COURT:  All right.

19          MR. BOHN:  Obviously, I am distinguishing it from

20  Counts One and Two, which is solely against the company.

21          THE COURT:  That's why I asked you, because that is

22  important.

23          MR. BOHN:  Yes.

24          THE COURT:  Because I don't see that.  I don't see

25  that in the complaint.

Iainmaso

1          MR. BOHN:  Don't see what, your Honor?

2          THE COURT:  I don't see this allegation or this count

3     being asserted against the company.

4          MR. BOHN:  The fraud count.  It says Cohen acting on

5     behalf of GCP --

6          THE COURT:  Where you reading from?

7          MR. BOHN:  For example, paragraph 81.

8          THE COURT:  All right.  So you are saying that by this

9     language you are alleging a claim for breach of contract

10    against the company and a claim for fraud against the company?

11         MR. BOHN:  Both of them, yes.  Fraud against both

12    defendants.

13         THE COURT:  I didn't think that is what you were

14    discussing.  You think that legally you can do that?

15         MR. BOHN:  That is our assertion at this point, your

16    Honor.  It may not pan out.

17         THE COURT:  Based on these facts?

18         MR. BOHN:  Based on these facts.

19         THE COURT:  The representations you say are made by

20    Cohen are one thing, but the representations that you have here

21    that are made by the company through Cohen is exactly the

22    contract.  You don't say that they made any other -- as a

23    matter of fact, you don't even say here even Cohen made any

24    other representation other than what is in the contract.  But

25    here at least Cohen is a person you are not suing for the

Iainmaso

1   breach of contract.

2           MR. BOHN:  Correct.

3           THE COURT:  But GCP you are suing for the breach of

4   the contract, and you are saying that the same facts that

5   constituted the breach of contract are the facts on which you

6   are separately suing them for fraud.

7           MR. BOHN:  The breach of the contract is the failure

8   to pay.  The fraudulent statements, the roster and others, were

9   made before that.  I believe that's a distinction, your Honor.

10          THE COURT:  Isn't that the same thing?

11          MR. BOHN:  I don't believe so, your Honor.  I think

12  the breach -- as you were pointing out before, let's say they

13  didn't make misrepresentations and the profits were generated

14  and not paid.  You would still have your breach of contract

15  claim.

16          The distinction I am making is between the breach for

17  failure to pay and the representations made prior to entry of

18  the contract with Mr. Mass.  As a matter of law perhaps the

19  fraud doesn't go forward against the corporation and it does

20  against Cohen.  But we're simply making our --

21          THE COURT:  That's one of the reasons why I went back

22  to the agreement.

23          MR. BOHN:  OK.

24          THE COURT:  Because the agreement clearly for the

25  parties in the agreement says this is the entire project.

Iainmaso

1   There is no reasonable reliance on --

2           MR. BOHN:  The merger clause, yes.

3           THE COURT:  Right.

4           -- some other additional promise that is not in the

5   agreement, because the agreement is the promise.  That's why

6   you put a merger clause in.  You don't want the parties to say

7   later on you promised me something more or different than

8   that's in the contract.

9           Again, the promise was that he would get 25 percent of

10  the promotional profits for the purpose of returning the

11  $250,000 investment, and an additional 5 percent of the

12  promotional profits as payment on his financial interest in the

13  promotional profits.  That's exactly what is in the contract.

14          MR. BOHN:  Thank you.

15          THE COURT:  Thank you.

16          You want to respond?

17          MR. SAPONARA:  Just three minor points.

18          THE COURT:  Sure.

19          MR. SAPONARA:  I just want to get back to what is

20  exactly in the complaint.  Mr. Bohn referenced damage to

21  Mr. Mass' credit rating.

22          If you go to paragraph 37, it says that was caused by

23  the failure to pay salary.

24          THE COURT:  I'm sorry.  Excuse me.  You keep saying

25  "paragraph," and you are confusing me.

Iainmaso

1            Paragraph 37 of?

2            MR. SAPONARA:  The complaint.

3            THE COURT:  The complaint.  Not the brief.  Paragraph

4   37.

5            OK.  "Additionally the failure of GCP and Cohen to pay

6   Mr. Mass' salary has caused damages to his credit rating and

7   his ability to finance business and personal affairs."

8            MR. SAPONARA:  I just wanted to clarify the

9   representation was that this had something to do with, the

10  credit score damage had something do with the investment

11  agreement.  That is not what the complaint says.  It says that

12  it's based on the failure to pay the salary.

13           THE COURT:  Right.

14           Is the salary part of the investment agreement?

15           MR. SAPONARA:  It is not.

16           THE COURT:  OK.  So that's not this claim?

17           MR. SAPONARA:  Yes.

18           I want to talk about the roster because the word

19  "roster" shows up once in this entire complaint.  It's in

20  paragraph 15.

21           THE COURT:  OK.  Paragraph 15.

22           MR. SAPONARA:  All that paragraph does is explain in

23  summary what promotional profits are.  There are no allegations

24  in this complaint that the roster was misrepresented, that

25  there were additions to it, that there were subtractions from

Iainmaso

1    it.  It's just not a basis it is not alleged to have been a

2    representation either in connection with the contract or the

3    actual schedule of members of the roster, whether that's

4    incorrect, or that Mr. Cohen made a representation that if you

5    give me $250,000 I can go sign Floyd Mayweather, and that that

6    was the reason that he entered into the contract.

7            I think this flows into my third point, which is this

8    isn't a situation where Mr. Cohen has all the information in

9    his head.  So I don't think it is appropriate to give an

10   opportunity to replead here.

11           Mr. Mass worked for the company from April 2015 to

12   February 2018.  If he got there in April of 2015 and said the

13   roster isn't what it was represented to me to be, he would know

14   that.  He could have alleged that.

15           If the roster ended up being different over the course

16   of his nearly three-year employment, he could have alleged that

17   in this complaint.

18           There's no new facts that he could have discovered or

19   that he could not have pled when he brought this original

20   complaint.  Misrepresentations have to be pled specifically.

21   You have to say when, where, and what.  So there's nothing in

22   here that Mr. Cohen and Mr. Mass met in February of 2015

23   outside Madison Square Garden and Mr. Cohen said X, Y, Z.  That

24   is not in here.  There is no detail whatsoever with respect to

25   the roster with respect to any representations other than what

Iainmaso

1    is in the agreement.

2           I don't think it would be appropriate here to give an

3    opportunity to take another crack at pleading fraud under these

4    circumstances.

5           THE COURT:  I am just curious.  What is the status of

6    the company at this point.  Is it still an ongoing company,

7    Mr. Mass just left, or it's no longer --

8           MR. SAPONARA:  The company is still operating.

9    Mr. Mass has just left.

10          THE COURT:  How many people work at this company?

11          MR. SAPONARA:  I believe there is a handful of

12   employees and people that he works with in the industry.

13   Whether they are affiliates or partners that don't actually

14   work for the company, there was a lot of situations where

15   they'll have co-promotional agreements where two separate

16   companies will jointly promote a single boxer.

17          THE COURT:  As opposed to permanent ongoing employees?

18   It was just Mr. Cohen and Mr. Mass and the secretary?

19          MR. SAPONARA:  I know there is a bookkeeper.  I think

20   it's a handful of employees.

21          THE COURT:  Again, handful would mean that.  I would

22   have to count my fingers.  It may mean something else.

23          MR. SAPONARA:  I'm confident it's fewer than ten.  I

24   don't know the exact number.

25          THE COURT:  All right.

Iainmaso

1                MR. SAPONARA:  Thank you, your Honor.

2                THE COURT:  I am going to go ahead and dismiss the

3     fraud claims.  I am going to dismiss it on two bases.  One, if

4     the fraud claims are intended to be alleged against the

5     company, that is not clearly alleged here.  It doesn't clearly

6     accuse the company of fraud.  But, even if it did, with regard

7     to the company, there is a direct contract here between the

8     company and the plaintiff.  The only allegation in this

9     complaint in support of an actual fraud as alleged in Count Six

10    or fraudulent misrepresentation as alleged in Count Five, the

11    only actual promise that is alleged in support of those counts

12    is the actual obligation that is in the contract.

13                It isn't alleged that any other statement that was

14    made to the defendant fraudulently induced him to enter into

15    the contract nor is it alleged that there was some other

16    representation that was before the contract, when the contract

17    was signed, in the contract, or even subsequent to the contract

18    that the plaintiff affirmatively relied upon with regard to the

19    company and its obligations.  They are the exact same

20    obligations that are laid out in the contract, and therefore,

21    an obligation to live up to the obligations as they are laid

22    out in the contract with regard to payment and with regard to

23    promotional profits that Mr. Mass would be entitled to.

24                So, based on, one, the lack of factual allegations

25    against the company in the complaint, even if there wasn't a

Iainmaso

1    contract, but additionally based on the fact that there is a

2    written contract that the plaintiff has obligations and rights

3    and the defendant has obligations, GCP has obligations under

4    that contract, that additionally would preclude suing the

5    company based on these facts for breach of contract and suing

6    the company for fraud based on the same promises that were

7    alleged in the complaint.

8            With regard to Mr. Cohen, Mr. Cohen is a signatory,

9    but he is not the contracting party.  The company is the

10   contracting party.  He is not being sued in contract based on

11   that investment agreement or any another agreement.  The

12   representations that were made in the contract, the obligations

13   in the contract that are attributed to him on behalf of the

14   company are what is relied upon in this complaint as a fraud.

15           Again, I see no separate fraud with regard to

16   fraudulent misrepresentation and actual fraud.  The only theory

17   of fraud, actual fraud or fraudulent misrepresentation in this

18   case is that Mr. Cohen made certain representations that

19   Mr. Mass relied upon, and he suffered damages because he relied

20   upon it.  The way he relied upon it is that he entered into the

21   contract and put up $250,000 and didn't get his $250,000 and

22   promotional profits.

23           First of all, that is not a representation of fact.

24   It is not even a representation of some current condition of

25   the company.  I understand separately a theory, although I'm

Iainmaso

not convinced that one could articulate it here, but I

understand at least a theory that if he made certain promises

about who was in the stable of fighters and those turned out to

be false and he suffered additional damages that are personally

recoverable outside of the contract with GCP and recoverable

from Mr. Cohen, I would understand that theory.

     But at this point that's not what the complaint says.

The complaint does not say, and there is obviously law to

support a position that if I say to you invest in my company

and I have ten trucks that are going to make us a big profit,

you can't sue me if we don't make a big profit, but you might

be able to sue me for fraud if it turns out I don't have ten

trucks.

     In this that case that's not what the complaint says.

I am going to dismiss the fraud claims without prejudice to you

if you think you can overcome and you can replead and you wish

to attempt to request that you be allowed to file an amended

complaint.  If I see that application with a letter explaining

to me what you have done and attaching a proposed amended

complaint and there aren't any serious motions to dismiss --

the other side can respond to that and tell me whether or not

that's futile or not -- I will give you that one opportunity.

     But, based on the facts as have been asserted, I don't

have any confidence that you will be able to, one, allege two

separate frauds, two, even allege a separate fraud against

Iainmaso

Cohen or the company, being able to assert reasonable reliance

on facts that would constitute a fraudulent inducement by the

company.  I don't know what Mr. Cohen represented to Mr. Mass

with regard to something that he could reasonably rely upon.

    I will give you that opportunity, but at this point,

reading the complaint, relying solely on the fact that

Mr. Cohen falsely represented that they were going to make

payments to him, that is not a sufficient basis for a separate

fraud claim against either Mr. Cohen or the company.

    It is a sufficient basis for a breach of contract, for

not living up to that promise.  The case law is clear that you

can't convert a breach of contract into a separate fraud claim

by simply alleging that what they promised me in the contract

they didn't perform or what they promised me in the contract

when they signed the contract, they never intended to perform.

What you must do is specifically articulate what

representations were made that you can independently

demonstrate were false at the time and that one would have not

reasonably gone forward with this agreement had one known the

true facts that were different than they were when you signed

the contract.

    I understand the defendants haven't attempted at this

stage of the proceeding to attack the Count One and Count Two

with regard to the breach of contract claims and the

contract-related claims against the company that signed the

Iainmaso

contract and the failure to pay the wages.  If they promised to
pay him promotional profits, to the extent that the contract
made that promise and those profits weren't paid, then the
defendant would be in breach of contract and liable for any
damages that are calculable under the formula, and, pursuant to
the contract, entitled to interest, costs, and attorney's fees
as laid out in the contract.

       With regard to Count Two, that the defendant was
employed and entitled to a salary during this period of time
and that salary was unjustifiably not paid, then they would
further be in breach of contract to pay the salary and any
damages and any other consequential damages if they are
appropriate pursuant to the employment.

       At this point I will dismiss the fraud claims, Counts
Five and Six.

       If the plaintiff wishes to attempt to amend, you can
submit that within the next 30 days.  Otherwise we will move
forward with the contract claims.  I will review that right
away and respond to it right away if that's where we're going
to go.

       Otherwise, given what we discussed, Count Five will be
dismissed, Count Six will be dismissed without prejudice to
amend.  Though, again, my position at this point is it appears
to me it's going to be futile, but I don't know all the facts.
If there are facts that can support a claim that is not

Iainmaso

1    asserted here or reassert it, then I will consider it.

2          Otherwise, those two counts will be dismissed.

3          The other counts we discussed will be dismissed

4    voluntarily, and Count Nine and Count Ten will be dismissed as

5    not being technically separate causes of action but without

6    prejudice to plaintiff to seek to either pierce the corporate

7    veil or seek attorney's fees and costs if there appears to be

8    evidence that piercing the corporate veil under the standard is

9    appropriate, if the facts warrant that, or, obviously pursuant

10   to the investment contract, the investment agreement that

11   attorney's fees and costs would be automatically recoverable

12   pursuant to the agreement.

13         The reason why that's important is because if there

14   were to be at the end of this case a genuine factual dispute,

15   an issue with regard to piercing the corporate veil and an

16   issue with regard to attorney's fees and costs, that is not a

17   jury issue.  That is not an issue for the trier of fact.  It is

18   an issue for the Court if the jury were to make other findings

19   of liability consistent with imposing liability pursuant to the

20   contractual obligation.

21         So I will issue an order consistent with that.

22         Again, I will give you an opportunity, once you look

23   at it further and consider whether you have further facts to

24   allege to support a fraud claim against either one of these

25   defendants as it's alleged now and whether or not you can have

Iainmaso

1    not just a factual basis to do so but a legal theory to do so,

2    that would not be precluded by the issues that we have

3    discussed today.

4         All right.

5         What I am going to do is I will do this.  I will

6    schedule a conference for January.  Mr. Bohn, if you intend to

7    attempt to amend, let them know as soon as possible so we can

8    anticipate that in the next 30 days; or, if you are just going

9    to move forward, then let's go ahead and move forward on the

10   contractual claims.

11        If you want the assistance of the magistrate judge or

12   mediation for settlement discussions, let me know, and I'll

13   refer you there in the first instance, to save you all time,

14   effort and expense.

15        But otherwise agree upon what is a reasonable schedule

16   for discovery and give me that by letter.  I will set it down

17   for January 17 at 9:45.  Before that time we will know from you

18   whether we are proceeding just on these counts, and I will know

19   what the schedule looks like that you have proposed and we can

20   see where we are on January 17 with regard to that schedule, if

21   we need to meet on that date, or I'll get a letter from you

22   before that telling me what the status is and asking me to

23   adjourn that date if that's appropriate.

24        As I said, just let me know if you want me to refer

25   you to mediation or the magistrate judge for settlement.  I

Iainmaso

1  will address that request as soon as you make it.  Otherwise,

2  start talking about moving forward with discovery.  If for some

3  reason we are going to address an amended complaint, an attempt

4  to amend the complaint before that time, we can resolve that

5  quickly and know that we're moving forward by January 17.

6           All right.  Is there anything else we need to address?

7           MR. SAPONARA:  No.

8           MR. BOHN:  Your Honor?

9           THE COURT:  Yes.

10          MR. BOHN:  Should we consider the dates in the current

11  CMO suspended pending what we'll go on with the pleadings?

12          THE COURT:  No.  Why don't you first discuss it and

13  agree to the extent that you can agree.  I'll probably go along

14  with it.  To the extent that you disagree, I'll resolve what

15  should be done depending on where we are and what you disagree

16  about.

17          MR. BOHN:  Your Honor, we will affirmatively advise

18  the Court what the plaintiff will do the pleading either way as

19  soon as we can and at that point, depending on what that

20  decision is, we can set forth a CMO with some new deadlines.

21  Thank you.

22          THE COURT:  Thank you.

23          MR. SAPONARA:  Thank you.

24          THE COURT:  Have a good day.

25          (Adjourned)