UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

CLIFFORD S. MASS,

                           Plaintiff,

   -against-

GREG COHEN PROMOTIONS, LLC and
GREGORY D. COHEN,

                          Defendants.

------------------------------------------------------------ x

MEMORANDUM DECISION
AND ORDER

18 Civ. 2239 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Clifford S. Mass ("Mass") brings this diversity action against Defendants Greg Cohen Promotions LLC ("GCP") and Gregory D. Cohen ("Cohen") for breach of contract and failure to pay wages for services rendered. (Pl.'s Mem. of Law on Mot. Summ. J., ECF No. 95, at 1.) Plaintiff alleges that Defendants breached an investment agreement, failed to pay him wages, and failed to repay a loan.

Before this Court are Plaintiff's motion for summary judgment, (ECF No. 93), and Defendants' cross-motion for summary judgment, (ECF No. 98), pursuant to Federal Rule of Civil Procedure 56. Plaintiff's motion for summary judgment is DENIED. Defendants' cross-motion for summary judgment is DENIED in part as to the breach of contract pertaining to the investment agreement and as to the failure to pay wages for services rendered. Defendants' cross-motion for summary judgment is GRANTED in part as to the breach of contract for failure to repay the loan.

## I. BACKGROUND

**A. Facts**

Plaintiff Mass is a citizen and resident of Nassau County, New York. (Notice of Removal, ECF No. 1, ¶ 4.) Defendant GCP is a New Jersey limited liability company that promotes professional boxers and boxing events. (Defs.' R. 56.1 Statement, ECF No. 99 ¶ 1.) Defendant Cohen is the founder, managing member, and chief executive officer of GCP, (*id.* ¶ 2), and a citizen and resident of Essex County, New Jersey, (Notice of Removal ¶ 6).

On or about March 10, 2015, Mass entered into an "Investment Agreement" (or the "Agreement," ECF No. 94-3) with GCP, which Cohen executed, (Defs.' Resp. to Pl.'s R. 56.1 Statement, ECF No. 103, ¶¶ 4, 8). Under the terms of the Agreement, following a cash investment by Mass in the amount of $250,000 to GCP, Mass was to receive a 25% preferred return of GCP's "Promotional Profits" on an event-by-event basis until Mass was repaid his $250,000 investment. (*Id.* ¶ 6.) Additionally, Mass was to receive from GCP a 5% financial interest in the Promotional Profits of GCP, again on an event-by-event basis, in perpetuity. (*Id.*) Mass made the $250,000 payment as required by the Agreement. (*Id.* ¶ 9.) The Investment Agreement defines Promotional Profits as

> [A]ll revenues or promotional fees received by GCP less expenses for any event in which one or more of the BOXERS are a participant that are attributable to such BOXERS' participation in such an event. These revenues and fees are the gross revenues for any event involving one or more of the BOXERS received by GCP from all sources, including without limitation, the television broadcast fees, (both domestic and foreign) gate receipts or site fees, sponsorships and merchandising rights *less* all reasonable expenses including all expenses incurred in promoting the event including, all purses to BOXERS, all reasonable travel and training expenses incurred by GCP for the BOXERS, all reasonable travel costs of persons working in conjunction with the promotion of the event, including press conferences and supplemental public relations, all applicable taxes (television and gate taxes), insurance, sanctioning fees, production fees, officials, judges and commission fees, general

> promotional expenses directly attributable to BOXERS and all other reasonable costs associated with the event or exploiting any and all rights to the event. These revenues shall also include (i) fees paid to GCP by a third party to provide the services of one or more BOXERS for an event not promoted by GCP and (ii) amounts paid to GCP by or on behalf of a BOXER in consideration for releasing a BOXER from his or her continuing obligations under a Promotional Agreement.

(Investment Agreement at 2–3.)

The Investment Agreement subordinates Mass's rights to receive Promotional Profits to GCP's right to recoup the signing bonuses, assignment fees, and release payments it paid for its boxers. The Investment Agreement provides

> All other expenses and obligations now and in the future incurred for the promotion of BOXERS shall be the responsibility of GCP; provided, however that if, in the future, GCP pays (i) a signing bonus to secure a Promotional Agreement with a BOXER, (ii) an amount in consideration for the assignment of a Promotional Agreement of a BOXER to GCP, or (iii) an amount in consideration for the release of a BOXER from a Promotional Agreement with another Promoter so that such BOXER may enter into a Promotional Agreement with GCP, then, in any such case, GCP, before paying any Promotional Profits to [Mass] with respect to such BOXER, shall have the right to recoup such amounts from revenues and promotional fees obtained by GCP with respect to such BOXER.

(*Id.* at 3–4.) GCP generated Promotional Profits between 2015 and 2020. (Defs.' Resp. to Pl.'s R. 56.1 Statement ¶ 18.) The parties present conflicting evidence as to any Promotional Profits owed to Mass. (*See id.* ¶¶ 13–20.)

Around the time the parties entered into the 2015 Agreement, Cohen named Mass the Vice President of Business Development for GCP. (*Id.* ¶ 10.) Mass was to receive a monthly salary from GCP in addition to his percentage of GCP profits. (*Id.* ¶ 22.) In May 2016, Plaintiff purchased 200,000 shares of Scythian Biosciences Inc. common stock for $200 from Cohen. (Decl. David Saponara, Ex. C, ECF No. 101-3.) The parties present conflicting evidence as to whether Mass was an employee or contractor of GCP, the amount of Mass's monthly salary, and

3

the amount of salary Mass in fact received from Defendants. (*See* Defs.' Resp. to Pl.'s R. 56.1 Statement ¶¶ 11–12, 21.)

In January 2016, Cohen asked Mass to loan GCP business associate Ricardo Rizzo $14,000. (*Id.* ¶ 23.) Cohen text-messaged Mass in reference to the loan, writing it was "signed in BLOOD." (*Id.* (quoting Jan. 19, 2016 Correspondence, ECF No. 94-13, at 1).) Plaintiff asserts he was never repaid, and Defendants similarly state that they do not "believe Rizzo has repaid [Mass]." (*Id.* ¶ 25 (quoting Cohen Dep. Tr., ECF No. 94-2, at 145:7).) The parties present conflicting evidence as to whether Cohen personally promised Mass, as a guarantor or otherwise, that Mass would be repaid for the loan amount from anyone other than Rizzo. (*See id.* ¶¶ 23–25.)

**B. Procedural History**

On February 5, 2018, Mass commenced this action against GCP and Cohen by filing a summons and verified complaint in the New York County Supreme Court. (Compl., Ex. A, ECF No. 1-1.) On March 13, 2018, GCP and Cohen removed the action to this Court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, based on the parties' diversity of citizenship in a matter in controversy exceeding $75,000. (Notice of Removal at 1.) Mass's original complaint alleged ten causes of action: (1) Count I – breach of contract; (2) Count II – failure to pay wages for services rendered; (3) Count III – breach of implied covenants of good faith and fair dealing; (4) Count IV – conversion; (5) Count V – fraudulent misrepresentation; (6) Count VI – actual fraud; (7) Count VII – unjust enrichment; (8) Count VIII – demand for accounting; (9) Count IX – piercing the corporate veil; and (10) Count X – attorney's fees and costs. (Compl.)

On April 20, 2018, Defendants moved to dismiss Counts III through X and all the claims alleged against Cohen individually. (Defs.' Mot. to Dismiss, ECF No. 15.) Mass voluntarily withdrew Counts III (breach of implied covenants of good faith and fair dealing), IV (conversion),

4

VII (unjust enrichment), and VIII (demand for accounting). (Pl.'s Opp'n Mem. of Law on Mot. to Dismiss, ECF No. 26, at 3–4, 17.) After oral argument on October 18, 2018, this Court dismissed Counts V (fraudulent misrepresentation) and VI (actual fraud) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, (Oct. 19, 2018 Order, ECF No. 29, at 1), with opportunity to amend, (Hr'g Tr., ECF No. 30-1, at 48:14–49:2). This Court also dismissed Counts IX (piercing the corporate veil) and X (attorney's fees and costs) as separate causes of action, without prejudice to Plaintiff seeking attorney's fees and costs as a prevailing party as provided in the Investment Agreement. (Oct. 19, 2018 Order at 1–2.)

On November 19, 2018, Mass filed his letter application with a proposed amended complaint seeking to replead the fraud claims, alleging that Cohen misrepresented the boxers on GCP's roster before the parties entered into contract in March 2015. (Pl.'s Letter Mot. for Leave to Amend, ECF No. 30.) On January 16, 2019, this Court denied Mass's letter application and confirmed the dismissal of Counts III through X. (Jan. 16, 2019 Order, ECF No. 36, at 1.)

The only claims remaining in this case are Counts I (breach of contract) and II (failure to pay compensation for services rendered). Mass seeks summary judgment on liability for Defendants' alleged breach of contract regarding the Investment Agreement (Count I) and full summary judgment on liability and damages for Defendants' alleged failure to pay wages for services rendered (Count II) and failure to repay the loan to Ricardo Rizzo (Count I). (Pl.'s Mem. of Law on Mot. Summ. J. at 1–2.) Defendants oppose Plaintiff's motion and seek summary judgment in their favor on Counts I and II, dismissing this action in its entirety. (Defs.' Cross-Mot. Summ. J.) On December 14, 2022, this Court held oral argument on these motions.

## II.   LEGAL STANDARD

Summary judgment is appropriate where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, a court must construe the evidence in the light most favorable to the opposing party and draw all reasonable inferences in

that party's favor. *Id.* (citation omitted). However, "a court must not weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (quotation marks and citation omitted). Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286 (citation omitted).

### III.   NEITHER PARTY IS ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF THE INVESTMENT AGREEMENT

Plaintiff alleges that Defendants breached the Investment Agreement by failing to pay Plaintiff his share of Promotional Profits, despite party admissions and independent records from GCP's accountants that such profits were obtained. (Pl.'s Mem. of Law on Mot. Summ. J. at 2.)

Defendants argue that they did not breach the Investment Agreement because Plaintiff cannot present sufficient evidence to prove actual damages. (*See* Defs.' Opp'n Mem. of Law on Mot. Summ. J., ECF No. 102, at 10–11.) Defendants maintain that while the Investment Agreement stipulates Mass was to receive a 5% interest in Promotional Profits, along with a 25% preferred return of Promotional Profits until he recouped his initial investment on an event-by-event basis, "the overwhelming majority of GCP's events have been losing propositions for the past several years." (*Id.* at 7.) Defendants thus argue that the structure of the Investment Agreement, and its subordination of Plaintiff's rights below GCP recouping "its investment in acquiring and training the fighters on its roster as an expense against the revenues that those fighters generate" in events, establishes that Plaintiff "is not entitled to anything at all." (*See id.* at 10.)

Plaintiff has alleged a viable breach of contract claim under the terms of the Investment Agreement so as to survive Defendants' cross-motion for summary judgment. The Investment Agreement stipulates that New York law shall govern any disputes arising under the Agreement.

7

(Investment Agreement at 5.) In a *prima facie* case for breach of contract under New York law, a plaintiff must prove (1) the formation of a contract between plaintiff and defendant, (2) performance by plaintiff, (3) defendant's failure to perform, and (4) resulting damages. *See Amable v. New Sch.*, 551 F. Supp. 3d 299, 308 (S.D.N.Y. 2021). Here, the formation of a contract and performance by Plaintiff in the form of his $250,000 investment are undisputed. (*See* Defs.' Resp. to Pl.'s R. 56.1 Statement ¶¶ 5–9.) While Defendants argue that they did not fail to perform because Plaintiff is not owed any Promotional Profits, they emphasize that Plaintiff's claim fails primarily due to Plaintiff's inability to prove damages. (*See* Defs.' Opp'n Mem. of Law on Mot. Summ. J. at 8–11.)

To survive Defendants' cross-motion for summary judgment, Plaintiff must only demonstrate a genuine issue of material fact exists as to the damages incurred from Defendants' alleged failure to perform. *See, e.g.*, *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017); *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011). Plaintiff's calculation of damages relies on his expert David E. Lomas, who reviewed records obtained directly from GCP's accountants and concluded that Plaintiff is entitled to a minimum of $286,584.00 in Promotional Profits, plus prejudgment interest. (*See* Pl.'s Mem. of Law on Mot. Summ. J. at 6; Suppl. Expert Rep., ECF No. 94-14, at 7–9.) Defendants object that Mr. Lomas failed to calculate Promotional Profits allegedly owed on an event-by-event basis as stipulated in the Investment Agreement and instead based his calculations on the notion that Mass is entitled to recover a percentage of GCP's net profits. (*See* Defs.' Opp'n Mem. of Law on Mot. Summ. J. at 7–8.) They argue that this mistake amounts to a failure to allege the damages element beyond a mere speculative loss, thereby precluding Plaintiff's breach of contract claim. (*Id.* at 8.)

Any possible defect in the expert's methodology does not negate Plaintiff's demonstration that *some* portion of Promotional Profits may have been owed and not paid to Plaintiff, thus establishing a viable breach of contract claim. In addition to the expert report, Plaintiff cites text messages between himself and Cohen to allege that the profits generated by the "Brant fight" amounted to approximately $65,000 and that profits generated by the "Miller fight" amounted to $17,000. (*See* Pl.'s Mem. of Law on Mot. Summ. J. at 4.) He also references communications that confirm wire payments to GCP as evidence of GCP profits. (*Id.* at 4–5.) Plaintiff alleges that he never received any Promotional Profits to which he was entitled from these events. (*Id.*) Plaintiff thus presents genuine issues of material fact as to Defendants' breach, conceding that "an exact calculation of damages to which . . . Mass is entitled pursuant to the Investment Agreement may warrant a limited trial or inquest . . . ." (*Id.* at 1.)

While Defendants admit that GCP generated Promotional Profits in the relevant time period, (Defs.' Resp. to Pl.'s R. 56.1 Statement ¶ 18), the amount of such Promotional Profits remains disputed. Promotional Profits exist after "all reasonable expenses" are subtracted from "all revenues or promotional fees received by GCP" for any event. (*See* Investment Agreement at 2–3.) Genuine issues of material fact remain as to which GCP events generated Promotional Profits after the deduction of reasonable expenses. (*See, e.g.*, Defs.' Resp. to Pl.'s R. 56.1 Statement ¶¶ 13–15 (disputing whether purported revenues and promotional fee figures account for deducted expenses)). Defendants' accusation that Plaintiff's claim is deficient for its "failure to even attempt to conduct a proper calculation of Promotional Profits" through documents provided by GCP, (*see* Defs.' Opp'n Mem. of Law on Mot. Summ. J. at 10), is undercut by Defendants' clear obligation within the terms of the Investment Agreement to maintain an accurate accounting of Promotional Profits on an event-by-event basis. (Investment Agreement at 4

9

(guaranteeing Mass's right "to examine the books and records [of GCP] concerning BOXERS retained by GCP for the purpose of establishing and enforcing his rights under this Agreement").)

Critically, genuine issues of material fact remain as to whether GCP owed any Promotional Profits to Plaintiff at all, thus preventing Plaintiff from proving breach of contract as a matter of law. At the summary judgment stage, this Court "must not weigh the evidence . . . or resolve issues of fact." *Victory*, 814 F.3d at 59 (quotation marks and citation omitted). In November 2015, Mass received a lump-sum payment from GCP in the amount of $7,500. (Decl. David Saponara, Ex. B, ECF No. 101-2, at 5.) Defendants also proffered evidence of an August 2016 check in the amount of $25,000 from Cohen to Mass with a handwritten memo of "Brant advance." (*Id.*, Ex. A, ECF No. 101-1, at 3.) It is unclear if these payments were Promotional Profits for events, *e.g.*, for the "Brant fight" referenced by Plaintiff. (*See* Pl.'s Mem. of Law on Mot. Summ. J. at 4.) Further, neither party has demonstrated what share of Promotional Profits, if any, may not have materialized due to GCP's power to recoup its payments to boxers for signing bonuses, assignment fees, and release payments, prior to disbursement of Promotional Profits to Mass. (Investment Agreement at 3–4.) Because there exists "evidence in the record that could reasonably support a jury's verdict for [either] non-moving party," summary judgment is improper on the alleged breach of the Investment Agreement. *See Marvel*, 310 F.3d at 286.

### IV. NEITHER PARTY IS ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF PLAINTIFF'S EMPLOYMENT

Plaintiff also alleges that Defendants failed to pay him wages for services rendered, moving for summary judgment on both liability and damages. (Pl.'s Mem. of Law on Mot. Summ. J. at 2.) As GCP's Vice President of Business Development from 2015 to 2018, Plaintiff claims that he recruited fighters, prepared PowerPoint presentations, attended GCP events, and assisted with the GCP website. (*Id.* at 8–9.) Plaintiff argues that his work constituted employment, for which

he was promised a monthly salary of $3,000 from April 2015 to December 2016 and $6,000 from January 2017 to approximately February 2018. (*See id.* at 8–10; Compl. ¶¶ 63–64). Plaintiff claims he received less than $30,000 in salary payments from GCP and is entitled to more than $114,000 in unpaid wages. (Compl. ¶¶ 65–66; Pl.'s Mem. of Law on Mot. Summ. J. at 10.)

Defendants counter that Plaintiff already received more assets as salary than he claims he is entitled to recover. (*See* Defs.' Opp'n Mem. of Law on Mot. Summ. J. at 14.) They cite financial records indicating Plaintiff received payments from GCP totaling $37,278.63, as well as 200,000 shares of common stock of Scythian Biosciences Inc. "worth at least $100,000" that Plaintiff bought from Cohen for $200. (*Id.* at 14–15; *see also* Decl. Saponara, Exs. A–C.) Defendants also argue that GCP never increased Plaintiff's salary to $72,000 because the letters representing the increase "were a farce that Mass requested Cohen provide as a personal favor to Mass and never reflected Mass's actual compensation arrangement with GCP." (Defs.' Opp'n Mem. of Law on Mot. Summ. J. at 14.) Further, Defendants contend that Plaintiff was only an "independent contractor who provided sporadic services to GCP" and was "on GCP's payroll as a W-2 employee" for merely one or two months. (Defs.' Reply Mem. of Law on Mot. Summ. J., ECF No. 107, at 8.)

In determining, whether a person may be liable as an employer, the primary consideration is whether the alleged employer possessed the power to control the worker in question, with an eye to the "economic reality" of the situation. *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir 1999). "Under the 'economic reality' test, the relevant factors include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (citation omitted).

In moving for summary judgment on unpaid wages, Plaintiff has not met his burden of demonstrating that no genuine issue of material fact exists as to Plaintiff's employment by GCP or his salary owed. Defendants acknowledge Plaintiff held a Vice President title at GCP, but they deny that he was a W-2 employee more than a few months. (Defs.' Resp. to Pl.'s R. 56.1 Statement ¶¶ 10–11.) Cohen also testified that Plaintiff "didn't really work for GCP" and "would come to the events[] usually more as a spectator than a worker." (Cohen Dep. Tr. at 188:19–189:6.) To prove the employer-employee relationship, Plaintiff relies primarily on two letters signed by Cohen confirming that Plaintiff was "employed at . . . Greg Cohen Promotions" as a Vice President and that Cohen "doubled [Plaintiff's] salary of $36,000 to $72,000." (*See* GCP Letters, ECF No. 94-11, at 1, 3; *see also* Pl.'s Mem. of Law on Mot. Summ. J. at 10 (citing same).) Defendants assert that these "income verification letters . . . are a complete shame." (Defs.' Reply Mem. of Law on Mot. Summ. J. at 8.) Without further evidence of Plaintiff's job activities, employment records, or other documentation, Plaintiff has not established, as a matter of law, his status as a GCP employee in the relevant period or that he completed services for Defendants for which he is owed wages. These genuine issues of material fact foreclose summary judgment on Plaintiff's employment claim.

Defendants also fail to present sufficient evidence to dismiss Plaintiff's employment claim. In alleging Plaintiff has received payments from GCP totaling $37,278.63, Defendants cite the $25,000 check with the handwritten memo of "Brant advance" on the check. (*See* Defs.' Opp'n Mem. of Law on Mot. Summ. J. at 14 (citing Decl. Saponara, Exs. A–B); *see also supra* Part III.) Construing the evidence in the light most favorable to Plaintiff and drawing all inferences in Plaintiff's favor, *see Niagara Mohawk*, 315 F.3d at 175, this handwritten memo indicates that the check may represent a disbursement of Promotional Profits pursuant to the Investment Agreement

and not a salary payment—an "issue[] of fact" that this Court cannot resolve at this stage on this evidence alone, *see Victory*, 814 F.3d at 59 (quotation marks and citation omitted).

Plaintiff also denies that the Scythian Biosciences stock he purchased for $200 constitutes wage compensation or that the stock was worth at least $100,000 at the time of sale. (*See* Pl.'s Opp'n Mem. of Law on Cross-Mot. Summ. J., ECF No. 105, at 12.) Plaintiff rightly notes that the Stock Purchase Agreement contains an integration clause and makes no mention of the stock sale as a transaction in furtherance of Plaintiff's wage compensation. (*Id.* at 12–13 (citing Decl. Saponara, Ex. C at 4)); *see, e.g.*, *Primex Intern. Corp. v. Wal-Mart Stores, Inc.*, 89 N.Y.2d 594, 600 (N.Y. 1997) ("A completely integrated contract precludes extrinsic proof to add to or vary its terms.") (citation omitted). Moreover, even if Plaintiff's total salary received was the "$37,278.63" in payments and Scythian Biosciences stock "worth at least $100,000" as Defendants assert, that total amount would be approximately $137,278.63, *i.e.*, nearly $7,000 short of the $144,000 that Plaintiff's expert claims Plaintiff earned in the relevant period. (*See* Suppl. Expert Rep. at 10.) Defendants have therefore not met their burden to defeat Plaintiff's claim for unpaid wages.

## V. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF THE LOAN TO RICARDO RIZZO

Finally, Plaintiff alleges that Defendants failed to reimburse Plaintiff's payment of a $14,000 loan to Ricardo Rizzo. (Pl.'s Mem. of Law on Mot. Summ. J. at 11–12.) Plaintiff claims that Cohen asked Plaintiff to issue the loan to Rizzo because GCP did not have the funds to issue the loan itself. (*Id.* at 11.) Plaintiff then cites a text message from Cohen in which Cohen wrote, "Correct 100% signed in BLOOD," in response to Plaintiff's message about the process for repayment. (*See id.* (quoting Jan. 19, 2016 Correspondence, ECF No. 94-13, at 1).) Plaintiff avers that neither Rizzo nor any of the Defendants have repaid Plaintiff for the loan. (*Id.* at 11–12.)

Thus, Plaintiff asserts that Defendants are in "breach of their agreement" because "Cohen has not reimbursed . . . Plaintiff for the $14,000.00 loaned to Mr. Rizzo on behalf of GCP." (*Id.* at 12.)

Defendants counter that neither Cohen nor GCP guaranteed repayment of the loan to Rizzo. (Defs.' Opp'n Mem. of Law on Mot. Summ. J. at 11.) Moreover, they argue that the Statute of Frauds requires the parties to execute a written guarantee for this alleged loan arrangement, and the text message exchange between Plaintiff and Cohen fails to qualify as such a written guarantee. (*Id.* at 12–13.)

Defendants have adequately demonstrated that no genuine issue of material fact exists as to their alleged liability for Plaintiff's loan to Rizzo. Under the New York Statute of Frauds, "[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith . . . if such agreement, promise or undertaking . . . [i]s a special promise to answer for the debt . . . of another person." N.Y. Gen. Oblig. Law § 5-701(a)(2). This writing "must contain substantially the whole agreement and all its material terms and conditions, so that one reading it can understand from it what the agreement is." *Kobre v. Instrument Sys. Corp.*, 387 N.Y.S.2d 617 (N.Y. App. Div. 1st Dept. 1976), *aff'd*, 374 N.E.2d 131 (N.Y. 1978) (quotation marks and citation omitted). Specifically, the memorandum "must designate the parties, identify and describe the subject matter, and state all of the essential terms of a complete agreement." *Walentas v. 35-45 Front St. Co.*, 797 N.Y.S.2d 908 (N.Y. App. Div. 2d Dept. 2005) (citations omitted). Here, even if this Court were to consider the text message exchange to be a written "memorandum," the exchange fails to describe the subject matter of the loan or state any of the essential terms of Cohen or GCP's alleged guarantee. (*See* Jan. 19, 2016 Correspondence at 1.) The exchange therefore does not comport with the New York Statute of Frauds to make either Defendant a guarantor for Plaintiff's loan.

Plaintiff's initial allegations illustrate the insufficiency of his claim. In his original complaint, Plaintiff alleged that Cohen "demanded [Plaintiff] loan Cohen" $14,000, which was sent to "Cohen's associate, Ricardo Rizzo." (Compl. ¶¶ 38, 40.) Plaintiff now alleges Rizzo was the loan recipient and Cohen was the guarantor, either personally or on behalf of GCP. However, there is no evidence that Cohen promised to Plaintiff that he personally or GCP would repay any portion of the $14,000 loan in the event Rizzo failed to repay. To substantiate his claim, Plaintiff cites the text message exchange that begins with Plaintiff informing Cohen that whatever Plaintiff did for Rizzo, Plaintiff "need[ed by] March 1." (Pl.'s Opp'n Mem. of Law on Cross-Mot. Summ. J. at 16 (quoting Jan. 19, 2016 Correspondence at 1.) At deposition, Cohen explained that when he replied to Mass, "Correct 100% signed in BLOOD," he meant that he "was going to make sure [Mass] got repaid." (*See id.* (quoting Cohen Dep. Tr. at 146:19–21).) Even with this testimony, a text message promising that Mass would "get repaid" does not amount to a written guarantee assuming legal liability for a loan. The essential and material terms of any loan contract—designating all the parties, describing the transaction, stating the loan amount, and providing who would serve as the guarantor—are absent from this exchange, failing to satisfy the requisite definiteness that the Statute of Frauds requires. Plaintiff's claim that Defendants failed to repay the $14,000 loan, as alleged in Count I, is therefore dismissed.

## VI. CONCLUSION

Plaintiff's motion for summary judgment, (ECF No. 93), is DENIED. Defendants' cross-motion for summary judgment, (ECF No. 98), is DENIED as to the breach of contract pertaining to the investment agreement and as to the failure to pay wages for services rendered. Defendant's motion is GRANTED as to the breach of contract for failure to repay the loan.

The Clerk of Court is directed to close the motions accordingly.

Dated: February 28, 2023
New York, New York

SO ORDERED.

_George B. Daniels_
GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE